UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES K., | NO. C17-6040-JPD |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff appeals the final decision of the Commissioner of the Social Security

Administration ("Commissioner") which denied his applications for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing

before an administrative law judge ("ALJ"). For the reasons set forth below, the Court orders

that the Commissioner's decision be AFFIRMED.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-three year old man with a

four-year college degree. Administrative Record ("AR") at 61. His past work experience

includes employment as a human resources manager for Lowe's Hardware, a corrections

officer at the Kitsap County Jail, and a U.S. Marine from 1991-1994. AR at 39, 62. Plaintiff

was last gainfully employed as a human resources manager in December 2011. AR at 62.

On March 31, 2014, plaintiff filed a claim for DIB payments, alleging an onset date of May 30, 2013. AR at 221, 223-26. Plaintiff asserts that he is disabled due to anxiety disorder, agoraphobia, panic disorder, and post-traumatic stress disorder ("PTSD") due to witnessing numerous suicide attempts during his time in the military as well as his work as a corrections officer. AR at 64-67.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 115-17, 125-30. Plaintiff requested a hearing, which took place on February 12, 2016 and June 17, 2016. AR at 47-55, 56-92. On September 27, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 20-41. Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 15, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On September 27, 2016, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since May 30, 2013, the alleged onset date of disability.

3.    The claimant has the following severe impairments: anxiety/panic and depression.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. He can perform simple and detailed tasks, but could not perform complex tasks consistently. He can perform routine jobs that do not require more than occasional adaptation to changes. The claimant can work in proximity to the general public, but cannot perform customer service, sales, or counter type jobs.

6.    The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1973, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged onset date of disability.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2013, through the date of this decision.

AR at 25-41.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's testimony?

2. Did the ALJ err in evaluating the opinion of examining psychologist Cynthia Collingwood, Ph.D.?

3. Did the ALJ err in evaluating the opinion of mental health counselor Keith Meyer, LMHC?

4. Did the ALJ err in evaluating the testimony of plaintiff's wife?

5. Did the ALJ err in evaluating plaintiff's RFC, and at step five?

Dkt. 11 at 1; Dkt. 18 at 1-2.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

**A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

*1.    Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's

---

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  However, this change is effective March 28, 2016 and not applicable to the August 29, 2014 ALJ decision in this case.  The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. The ALJ Provided Several Clear and Convincing Reasons for Affording Plaintiff's Testimony Less Weight

The ALJ summarized plaintiff's testimony, and found that "after carefully considering the overall evidence of record, I find that the claimant's severe medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 29.[4] As discussed below, the ALJ cited several reasons for affording plaintiff's testimony less weight, and these reasons are clear and convincing, and supported by substantial evidence.

First, the ALJ found that plaintiff's reasons for stopping work undermined his symptom testimony. AR at 33-34. An ALJ may reject a claimant's symptom testimony if the claimant stopped working for reasons other than debilitating impairments. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff stopped working in December 2011 not because of his

---

[4] Specifically, the ALJ asserts that she accounted for his alleged symptoms of PTSD and anxiety, which he asserts make it difficult for him to focus and interact with others, by restricting him to routine work that did not require more than occasional adaptation to changes and did not require him to perform complex tasks. AR at 27, 33, 63, 70, 247, 291. Similarly, the ALJ asserts that she accounted for his claimed social limitations by limiting him to work that did not involve customer service, sales or counter-type jobs. AR at 27.

impairments, but rather due to layoffs by his employer.  AR at 22, 63, 592.  He subsequently

searched for similar work while receiving unemployment benefits, AR at 33-34, 63, 215, 592,

and he applied for disability benefits during the same period that his unemployment benefits

ended.  AR at 34, 223-24.  The ALJ could reasonably conclude that this timeline suggested that

plaintiff applied for disability benefits because his unemployment benefits terminated and he

was unable to find other employment opportunities.  AR at 34.  This was a proper reason,

among others, for the ALJ to discount plaintiff's allegations of debilitating symptoms and

limitations.  AR at 34.

The ALJ also found that plaintiff's symptoms improved with medication and therapy.

AR at 33.  The effectiveness of medication and other conservative treatment modalities is

relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. § 404.1529(c)(3); *see

also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of conservative treatment is

sufficient to discount a claimant's testimony regarding the severity of an impairment.")

(internal quotation marks and citation omitted).  Plaintiff alleged that his inability to focus or

leave the house prevented him from working.  AR at 63-64, 291.  However, by October 2013,

five months after his alleged disability onset date, plaintiff reported symptom improvement

with medication.  AR at 367, 369.  He continued to report an alleviation of symptoms in

subsequent months, AR at 394-403, 631-34, and in September 2014, plaintiff reported that he

was "doing much better" and was "able to out of the house." AR at 419, 421.  In 2015,

plaintiff stated that he was feeling "pretty good," and he lowered his medication dosage. AR at

576.  Treatment notes from 2016 similarly indicate that plaintiff's symptoms were effectively

controlled with medication. AR at 699-700.  Impairments that are effectively controlled with

medication are not disabling. *Warre v. Astrue*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Thus, the

ALJ could properly conclude that plaintiff's improved functioning with therapy and medication reasonably cast doubt on his subjective complaints.

Third, the ALJ found that the objective medical evidence was inconsistent with plaintiff's subjective complaints. AR at 33. An ALJ can reject symptom testimony that does not comport with the objective evidence in the medical record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2007). Despite allegations of severe symptoms and limitations related to anxiety, AR at 291, 307, the ALJ found that the objective medical evidence revealed only unremarkable findings, including intact cognition, abstraction, judgment, insight, fund of knowledge, and memory, and no unusually anxious features. AR at 33, 365, 367, 369, 371, 373, 375, 377-80, 389, 398, 401, 404, 408-09, 420, 423, 562, 567, 567-68, 576-77, 580. In addition, although plaintiff testified that he was not comfortable around anyone except his children, AR at 70, the ALJ noted that the record reflects that he was able to consistently engage in a pleasant and cooperative manner with treatment providers "indicating he can tolerate some level of social interaction in the workplace." AR at 33, 365, 367, 369, 371, 373, 375, 377, 388, 397, 400, 403, 408, 419, 561, 567, 573, 579, 582, 592, 699, 707. Based on these findings, the ALJ reasonably concluded that the medical evidence of record was not consistent with the severity of limitations plaintiff alleged. AR at 33.

Fourth, the ALJ found that plaintiff's daily activities cast doubt on the alleged severity of his symptoms. AR at 35-36. An ALJ may discount a claimant's allegations when his "activities []incompatible with the severity of symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff testified that he did not go outside except to shop, AR at 63-64, but he later acknowledged that he took his children to the park. AR at 79; *see also* AR at 651. In addition, despite his allegations that he could not focus for any length of time, plaintiff was able to read for one to two hours per day, play videogames, and use his computer.

AR at 76-77, 367, 371, 593-94. Plaintiff also had fifty percent custody of his children, and he was able to prepare his children's meals, drive them to school as needed, play games and hang out with them. AR at 71-74, 82. Based upon this evidence, the ALJ reasonably concluded that plaintiff's activities were incompatible with his allegations of totally disabling impairment. AR at 35-36.

Fifth, the ALJ found that plaintiff's numerous inconsistent statements cast doubt on the reliability of his subjective symptom testimony. AR at 34-35. When evaluating a claimant's testimony, an ALJ may consider prior inconsistent statements concerning symptoms and other testimony that appears less than candid. *Molina*, 674 F.3d at 1112. The ALJ identified a long list of examples of plaintiff's inconsistent statements throughout the record, and observed that plaintiff's "accounts provided to the various medical personnel and at the hearing, are widely divergent." AR at 35.

For example, plaintiff testified that his PTSD symptoms stemmed from suicides he witnessed when working in the military and at the Kitsap County Jail. AR at 34, 64. However, when he was questioned further during the administrative hearing, he acknowledged that he never witnessed any actual suicides - only suicide attempts - and none of these attempts resulted in the death of a military member or an inmate. AR at 34, 64-66. Plaintiff's hearing testimony directly contradicts his reports to VA examiners and other medical providers, including Dr. Collingwood, that he witnessed completed suicides in the military and while working at the jail. AR at 427, 589-90, 652. In addition, although plaintiff testified that he witnessed someone trying to hang themselves by jumping off a railing while working as a corrections officer, AR at 65, he informed Veteran Affairs staff that this incident occurred while he was in the military. AR at 35, 652. Plaintiff also testified that he experienced psychotic symptoms for approximately one year after his alleged onset date of May 2013. AR

at 35, 66, 651.  However, the medical evidence shows that plaintiff's purported psychotic

symptoms quickly resolved only a few months after his alleged onset date.  AR at 35, 369, 371,

375, 389, 395, 398, 401, 404, 409, 562.  Based on these inconsistencies, the ALJ reasonably

determined that plaintiff's symptom testimony was not fully reliable.  *See Fair v. Bowen*, 885

F.2d 575, 605 n.4 (9th Cir. 1989) (explaining that, if a claimant is found to be less than candid

in parts of his testimony, an ALJ may take that into account in determining whether the rest of

his testimony is reliable).

Finally, the ALJ noted that the Veteran's Administration ("VA") concluded that some

of plaintiff's allegations relating to his symptoms of PTSD were "difficult to believe," and that

plaintiff's reported stressors were insufficient to warrant a diagnosis of PTSD.  AR at 34-35,

647.  The ALJ must "ordinarily give great weight" to a VA determination regarding a

claimant's disability, *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Consistent

with the VA's finding, the ALJ concluded that plaintiff's experience witnessing suicide

attempts would not have caused any personal threat to plaintiff and did not sufficiently support

his alleged PTSD symptoms.  AR at 34.  Moreover, the ALJ found that the VA's conclusions,

which she credited, further undermined plaintiff's allegations regarding the severity of his

symptoms.  AR at 34-35.

Plaintiff does not challenge the ALJ's findings that his subjective complaints were

inconsistent with his work history, treatment history, the objective meidcal evidence, his daily

activities, or the VA's conclusions.  *See* Dkt. 11 at 14.[5]  Moreover, plaintiff concedes that he is

"a wild self-reporter, to the Agency and to his doctors."  Dkt. 11 at 14.  However, plaintiff

---

[5] Plaintiff has thereby waived such challenges. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (a court "will not consider any claims that were not actually argued in [a claimant's] brief").

contends that his inconsistent reporting is "part and parcel of his PTSD and anxiety" and that his litany of inconsistencies in his trauma reports should not undermine his symptom testimony because it only establishes "misreporting or misremembering." *Id.* Plaintiff's contention is unpersuasive, and at most, represents an alternative interpretation of the evidence that is insufficient to undermine the ALJ's reasonable interpretation of the record. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ determined that plaintiff's drastically inconsistent reporting cast doubt on the reliability of his testimony. AR at 34-35. Accordingly, the ALJ identified numerous clear and convincing reasons, supported by substantial evidence, for affording plaintiff's testimony little weight.

      B.      <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

          *1.     Standards for Reviewing Medical Evidence*

      As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. *Cynthia Collingwood, Ph.D.*

On January 19, 2016, examining psychologist Cynthia Collingwood, Ph.D. reviewed records,[6] tested, interviewed, and examined plaintiff.  AR at 589-95, 597-99, 602, 605, 607,

---

[6] Her record review included the following: Edward Case, MD, Psychiatrist-November 2013 to August 2014; Heritage Family Medicine, L. Stafford, DO; May 2013 to December 2013;

612-15. The tests she administered included: MMSE, Trails A&B, Hamilton Anxiety Scale, Hamilton Depression Scale, Rey 15, and the Coping Resources Inventory. AR at 589. During the interview, plaintiff described a history of trauma and vivid threat experiences, such as suicides in his military service and assaults during his work in corrections. AR at 589-90. He reported having marked psychiatric difficulties in 2013 after loss of a job. AR at 589. His symptoms included flashbacks and intrusive memories of traumatic events from military and corrections service, such as suicides, violence and death. AR at 590. He reported symptoms including shortness of breath, problems with sleep, including alternating periods of insomnia and excessive sleep, social isolation, restlessness, depressed mood, lack of appetite and forgetting to eat, increased lability and impulsivity, periods of psychosis with auditory and visual hallucinations, confusion, and delusions focused on religious themes. AR at 590.

Dr. Collingwood opined that plaintiff would be distractible in a work setting, unable to persist, and that his chronic panic attacks would interfere with his productivity and interpersonal relationships. AR at 595. She further opined that plaintiff would have marked limitations in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in proximity to others, complete a normal workday, interact appropriately with the general public, travel, and set realistic goals for himself. AR at 598-99. She concluded that plaintiff is unable to perform competitive employment, and that his anxiety condition meets the criteria of listing 12.06. AR at 595, 602.

The Court finds that the ALJ provided several specific and legitimate reasons for not adopting Dr. Collingwood's opinion in this case.[7] Specifically, the ALJ discounted Dr.

Keith Meyer, LMHC-July 2013 to October 2014; Veterans Administration C-File Military and VA Records-1991 to present (January 2016); St. Peter Hospital, Olympia WA-May 16, 2013. AR at 589.

[7] As a threshold matter, Dr. Collingwood's opinion was not uncontroverted as a matter of law, as plaintiff alleges. Dkt. 11at 6. Rather, Dr. Collingwood's opinion was contradicted

Collingwood's opinion because it was (1) predicated to a large extent on plaintiff's subjective reports, which the ALJ found to be less than reliable; and (2) inconsistent with the medical evidence. AR at 39. Both of these reasons are specific, legitimate, and supported by substantial evidence.

First, the ALJ rejected Dr. Collingwood's opinion because it relied heavily on plaintiff's subjective reports, which the ALJ considered unreliable. AR at 38. An ALJ may reject a medical opinion that relies to a large extent on a claimant's non-credible subjective reports, particularly when those reports create an inaccurate diagnostic picture. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (upholding ALJ's rejection of examining physician's opinion because it was "based primarily on [claimant's] self-report of limitations," including "her erroneous belief that Chaudhry's wheelchair and cane were prescribed"); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (indicating a psychologist may be faulted for believing a claimant's complaints when there is evidence that the claimant was deceptive).

Here, Dr. Collingwood found that plaintiff's symptoms included "flashbacks and intrusive memories of traumatic events from the military and corrections services, such as suicides, violence, and death." AR at 590. Dr. Collingwood further commented that plaintiff was "exposed to multiple traumatic events, including suicide attempts and completed suicides," which led to PTSD symptoms that ultimately prevented him from working. AR at

---

by the opinions of the State agency medical consultants Lisa Hacker, M.D., AR at 99-101, and Gary Nelson, Ph.D. AR at 110-12. The Ninth Circuit has held that, when an examining doctor's opinion is contradicted by the opinions of the State agency medical consultants, an ALJ can reject the examining doctor's opinion by giving specific, legitimate reasons for doing so that are based on substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Thus, the ALJ need only provide specific and legitimate reasons for rejecting Dr. Collingwood's opinion.

599. As discussed above, however, in relation to plaintiff's inconsistent reports to medical providers throughout the record, the ALJ found that the medical history on which Dr. Collingwood relied was inaccurate. AR at 38, 589-90. Plaintiff informed Dr. Collingwood that he witnessed "many suicide attempts and completed suicides" while working as a marine and as a corrections officer. AR at 589-90. Plaintiff also Dr. Collingwood that he was in a "live fire" incident while training in the military. AR at 589. In direct contradiction to these statements, plaintiff acknowledged at the administrative hearing that he only witnessed suicide attempts, but no actual suicides resulting in death. AR at 64-66. Similarly, the ALJ adopted the VA's conclusion that plaintiff's assertions that live rounds were used in military training exercises were "difficult to believe" and that plaintiff's stressors were insufficient to warrant a diagnosis of PTSD. AR at 34-35, 38, 647.

Accordingly, the ALJ properly rejected Dr. Collingwood's opinion because "it is clear that Dr. Collingwood relied heavily on the claimant's subjective reports, which are not reliable" and "Dr. Collingwood did not appear to question any of the claimant's self-reports." AR at 38. As plaintiff's representations to Dr. Collingwood regarding his traumatic experiences were, by plaintiff's own admission, inaccurate, AR at 64-66, the ALJ could properly discount Dr. Collingwood's opinion despite the fact that Dr. Collingwood also had an opportunity to observe plaintiff and administer testing. An ALJ can reject a medical opinion that relies on an inaccurate medical history. *See Chaudrey*, 688 F.3d at 671.

Finally, the ALJ assigned Dr. Collingwood's opinion little weight because it was inconsistent with the medical evidence. AR at 39. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the ALJ properly rejected a medical opinion because it was inconsistent with the medical records); 20 C.F.R. § 404.1527(c)(4) (stating that consistency

with the record as a whole is a factor the ALJ should consider when evaluating medical opinions).  Substantial evidence supports this finding.

For example, although Dr. Collingwood opined that plaintiff would have marked limitations in the areas of understanding, memory, concentration, and persistence, AR at 597-98, the ALJ noted that plaintiff consistently demonstrated a high level of cognitive functioning during treatment visits.  AR at 39, 365, 367, 369, 371, 373, 375, 377-80, 389, 398, 401, 404, 408-09, 420, 423, 562, 567, 567-68, 576-77, 580.  Moreover, contrary to plaintiff's representation that he isolated himself at home and Dr. Collingwood's finding that he is unable to "maintain ongoing public contact," AR at 594, the ALJ pointed out that plaintiff testified at the hearing that he took his children to the park on a regular basis and had breakfast with his brother a month ago.  AR at 38-39, 63, 71, 79.[8]  As noted above, the ALJ reasonably found that the medical evidence showed that plaintiff's mental health symptoms improved with therapy and medications. AR at 39, 367, 369, 394-403, 419, 421, 576, 631-34, 699-70. Although it is true that mental health symptoms naturally wax and wane over the course of treatment, an ALJ may still discount allegations of total disability when the record shows a broader development of sustained improvement. *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016).

Accordingly, the ALJ provided several specific and legitimate reasons for affording Dr. Collingwood's opinion little weight.  As these reasons are supported by substantial evidence in the record, the ALJ did not err in rejecting Dr. Collingwood's opinion.

---

[8] Even if the ALJ had adopted Dr. Collingwood's opined social limitations, any error was harmless because the VE testified that a person with plaintiff's RFC could still perform the requirements of an automobile detailer, a job where the individual works "pretty independently and alone, most of the time."  AR at 40, 89, 598.

C.    The ALJ Did Not Err in Evaluating the "Other Source" Evidence

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

### 1.    *Keith Meyer, LMHC*

On October 20, 2014, plaintiff's treating therapist Keith Meyer, LMHC, issued a medical source statement on plaintiff's behalf. AR at 427-28. He based his opinion on treatment he had given plaintiff since July 2013 for PTSD since he left the military. AR at 427. Mr. Meyer opined that plaintiff was affected by his military experiences, flashbacks, intrusive thoughts, and disrupted sleep. AR at 427-28. Mr. Meyer opined at Plaintiff met the listings for PTSD and found plaintiff was not capable of sustaining regular and continuing work, rating his GAF at 36 (major impairment in work, school, judgment), based on isolation, lack of social network, inability to work, strained relationships, severe mental health symptoms, and his avoidance of stimuli related to his military trauma experiences. AR at 428.

On March 15, 2015, Mr. Meyer issued a medical source statement regarding plaintiff's functional abilities. AR at 436-39. He based his opinion on treatment he had given plaintiff since July 2013 for PTSD, and assessed the most severe limitations in functioning in nearly all categories, which would "preclude performance/productivity for 30% of an 8-hour workday." AR at 436-38, 598. Specifically, he found that plaintiff's PTSD precluded him from adequately understanding and remembering, maintaining concentration and persistence, interacting socially, and adapting in a work setting. AR at 427-28, 437-39.

The ALJ rejected Mr. Meyer's opinion on grounds that (1) it was inconsistent with the overall record, notably improvement with therapy; (2) he over-relied on plaintiff's incredible self-reports; and (3) plaintiff's daily activities were inconsistent with his opinion. AR at 37-38.

First, the ALJ found that Mr. Meyer's opinion was "grossly inconsistent" with the overall medical evidence of record. AR at 37. An ALJ can reject an "other source" opinion that is inconsistent with the objective evidence in the record. *See* 20 C.F.R. § 404.1527(c)(f) (consistency with the record is a relevant factor that the ALJ should consider when evaluating "other source" opinions). As discussed at length above, the ALJ could reasonably find that Mr. Meyer's opinion is at odds with medical evidence indicating that plaintiff's mental health symptoms improved with treatment. AR at 367, 369, 394-403, 419, 421, 576, 631-34, 699-70. In addition, the ALJ noted that although Mr. Meyer opined that plaintiff's limitations in his ability to understand and remember even short and simple instructions and maintain concentration and persistence would preclude productivity for thirty percent of the workday, AR at 436-37, plaintiff consistently displayed a high level of cognitive functioning during his various treatment visits. AR at 37, 365, 367, 369, 371, 373, 375, 377-80, 389, 398, 401, 404, 408-09, 420, 423, 562, 567, 567-68, 576-77, 580. Substantial evidence supports the ALJ's finding. AR at 37.

The ALJ also discounted Mr. Meyer's opinion because plaintiff gave wildly divergent reports regarding the cause of his PTSD symptoms. AR at 37. An ALJ can reject an opinion that is predicated in part on an inaccurate medical history or diagnostic picture. *See Chaudrey*, 688 F.3d at 671 (upholding ALJ's rejection of opinion when it was predicated in part on inaccurate information). Mr. Meyer based his opinion to a large extent on Plaintiff's "severe PTSD symptoms" stemming from plaintiff's traumatic experiences when working in the military and as a security card. AR at 427, 439. As discussed above, plaintiff's reports regarding his traumatic experiences were highly variable, discounted by the VA, and contradicted by plaintiff's own testimony at the hearing that he never witnessed a completed suicide. AR at 64-66, 427, 647. Thus, the ALJ reasonably found that plaintiff's inconsistent reports regarding his traumatic experiences further undermined the reliability of Mr. Meyer's assessment. AR at 37.

Finally, the ALJ cited plaintiff's ability to maintain fifty percent custody of his children and take care of their needs as a reason to assign Mr. Meyer's opinion little weight. AR at 38, 71. Although without more, this reason would not be sufficient, the ALJ did not err by finding that plaintiff's ability to care of their needs independently "demonstrates a much higher level of functioning than reflected in Mr. Meyer's assessment." AR at 38, 437-38. *See Britton*, 787 F.3d at 1113 (finding claimant's daily activities, such as homeschooling her children, discredited opinion of a nurse practitioner that claimant could not work). Accordingly, the ALJ provided the requisite germane reasons to reject Mr. Meyer's opinion, and these reasons are supported by substantial evidence.

### 2. *Margaret McLean*

Plaintiff's wife, Margaret McLean, completed a third party function report on plaintiff's behalf on July 27, 2014, as well as a declaration dated February 10, 2016. AR at

275-86.  She claimed that plaintiff experienced delusions and for approximately one year after plaintiff's alleged onset date.  AR at 279-80, 324.  Ms. McLean stated that plaintiff's psychotic symptoms affected his ability to leave the home and attend to his hygiene.  AR at 324.  She further alleged that plaintiff's psychosis resolved with a change in his medications, but he continued to struggle with diminished memory and concentration, anger, paranoid thoughts, and difficulties completing tasks.  AR at 279, 284, 324.  Ms. McLean stated that she has assisted plaintiff with tasks of daily living and with taking care of their children. AR at 325.

The ALJ summarized both of Ms. McLean's statements in detail, but assigned them minimal weight.  With respect to her assertion that plaintiff was psychotic from approximately June 2013 through December 2014, the ALJ asserted Ms. McLean's opinion was "inconsistent with the medical evidence of record, which shows that he endorsed having psychotic symptoms for only a few months and they quickly resolved with medications." AR at 36, 324, 369, 371, 375, 389, 395, 398, 401, 404, 409, 562.  Inconsistencies between a lay witness opinion and the record evidence is a germane reason for the ALJ to assign it little weight.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  The ALJ also found inconsistencies between Ms. McLean's statements regarding plaintiff's concentration problems and the medical evidence, which showed a very high level of cognitive functioning during treatment visits.  AR at 284, 324, 365, 367, 369, 371, 373, 375, 377-80, 389, 398, 401, 404, 408-09, 420, 423, 562, 567, 567-68, 576-77, 580.  Similarly, the ALJ found inconsistencies between Ms. McLean's statements that plaintiff was unable to care for his hygiene on a regular basis, AR at 324, and treatment notes indicating that plaintiff consistently displayed normal hygiene and grooming during office visits.  AR at 365, 367, 369, 371, 373, 375, 397, 400, 403, 416, 422, 561, 564, 573.  Finally, the ALJ found Ms. McLean's statements that plaintiff was not always able to care for his children independently,

AR at 325, to be inconsistent with plaintiff's own statements regarding his ability to care for his children. AR at 71-74, 593. For example, although Ms. McLean stated that plaintiff was not always making his children's lunches, AR at 325, plaintiff stated that he "provides appropriate meals when his children visit." AR at 74, 593. The ALJ reasonably found Ms. McLean's statements regarding his ability to care for his children to be unreliable. AR at 37. Thus, the ALJ provided several specific and germane reasons for affording Ms. McLean's opinions little weight, and these reasons are supported by substantial evidence. AR at 36-17.

### E. The ALJ Did Not Err in Evaluating Plaintiff's RFC or at Step Five

Finally, plaintiff contends that the ALJ's RFC assessment and the ALJ's hypothetical question to the vocational expert were deficient. However, plaintiff's remaining assignment of error is essentially a restatement of his previous arguments regarding the medical evidence in this case. Because the Court has affirmed the findings of the ALJ as to plaintiff's prior assignments of error, it must also conclude that there was no error in determining plaintiff's RFC. Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that he believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC assessment or the hypothetical question posed to the vocational expert at step five. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

### VIII. CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision be AFFIRMED. The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other

ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

DATED this 30th day of January, 2019.


*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge